UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ENGLISH TEA SHOP USA CORPORATION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:20-CV-3453-B |
| LINNETH DELROSE HALL, | § § § | |
| Defendant. | § | |

MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Linneth Delrose Hall's Motion to Dismiss (Doc. 9). For the reasons that follow, the Court **GRANTS** the motion and **DISMISSES** this case **WITHOUT PREJUDICE** based on a lack of personal jurisdiction.

I.

BACKGROUND[1]

This is a trademark-infringement action arising from the sale of tea. English Tea is a California corporation that produces and sells various organic teas under the name "Tea of Life[.]" Doc. 1, Compl., ¶¶ 1, 7. English Tea partners with brick-and-mortar retailers, as well as retailers on platforms such as Amazon.com, that sell English Tea's products. *See id.* ¶¶ 1, 7, 19. Through the tea sales, English Tea nets approximately $1.28 million annually. *Id.* ¶ 7. English Tea alleges that it "has

---

[1] The Court draws the facts from Plaintiff English Tea Shop USA Corporation ("English Tea")'s complaint (Doc. 1) and the exhibits submitted along with the parties' briefing to the extent these exhibits are relevant and unchallenged.

- 1 -

maintained significant sales in the Dallas, Texas, area for several years[.]" *Id.* ¶ 1. English Tea has multiple "affiliate compan[ies]" that sell "Tea of Life" products, including Amazon Trading PVT, LLC ("ATP"), "a Texas limited liability company," and "Tea of Life, Inc. ('TOL'), a Texas corporation[.]" *Id.* ¶¶ 13, 16.

Defendant Linneth Delrose Hall ("Hall"), a New York resident, sells "medicinal teas" under the name "Tea of Life" on platforms such as Amazon.com. *Id.* ¶¶ 2, 8 (emphasis omitted). Hall owns the registered trademark "TEA OF LIFE[.]" *Id.* ¶ 9. Accordingly, when English Tea's affiliate, ATP, applied for trademark registration "for the mark 'TEA OF LIFE'" in 2008, the United States Patent and Trademark Office ("USPTO") "cited Hall's [mark] against registration [of ATP's mark] on the basis of potential consumer confusion between the everyday drinking tea and Hall's medicinal tea." *Id.* ¶¶ 13–14. English Tea, however, alleges that it had been using the "Tea of Life" name "for years prior to [Hall's] purported first use in commerce." *Id.* ¶ 12 (emphasis omitted).

After the denial of ATP's application for registration, ATP's counsel "contacted Hall[.]" *Id.* ¶ 15. Hall's counsel responded and "outlined Hall's use, confirmed Hall's first use post-dated ATP's prior use rights and declared amenability to a coexistence agreement." *Id.* Counsel for ATP and Hall then "verbally agreed to coexist." *Id.*

Years later, TOL, another affiliate of English Tea, received a letter from Hall's counsel "claiming infringement." *Id.* ¶ 16. TOL's counsel, "the same counsel that previously communicated with Hall's counsel in 2008," responded. *See id.* ¶ 17. Further, "TOL's counsel again extended an offer to cooperate with Hall for a mutually acceptable resolution for coexistence." *Id.* A little over one month later, TOL's counsel "sent Hall a letter outlining terms for a mutual, confidential agreement of coexistence, as previously agreed," but "Hall's counsel did not respond[.]" *Id.* ¶ 18.

English Tea, Hall, ATP, and TOL thereafter "co-existed" for over eight years. *Id.*

Then, in September 2020, English Tea discovered that Hall submitted "takedown notices" via Amazon.com to two of English Tea's buyer–retailers. *See id.* ¶¶ 19–20, 42. The first retailer received a "trademark infringement takedown notice from Amazon.com" stating that "either [Hall] must file a retraction, or the retailer must provide supporting documentation" authorizing its use of Hall's mark. *Id.* ¶ 19. The second "received a notice of infringement from Amazon.com" placing English Tea's product "on hold" until Hall filed a retraction or the retailer provided "proof of authenticity[.]" *Id.* ¶ 20.

Based on these takedown notices, English Tea filed an action against Hall in this Court, asserting claims for: (1) declaratory judgment of non-infringement; (2) declaratory judgment of fraud on the USPTO; (3) cancellation of Hall's mark; (4) tortious interference with existing business relationships; (5) tortious interference with prospective business relationships; and (6) breach of implied contract. *Id.* ¶¶ 23–51. English Tea also requests a preliminary and permanent injunction against Hall. *Id.* ¶¶ 54–57.

On December 2, 2020, English Tea's counsel emailed Hall the complaint and requested a waiver of formal service. *See* Doc. 14-3, Ex. B, ¶ 2; Doc. 14-4, Ex. 1, 2. When English Tea did not receive a waiver, English Tea's counsel asked Hall's counsel: "Will you [be] accepting service on behalf of Ms. Hall?" Doc. 14-6, Ex. 3, 2. On December 14, 2020, Hall's counsel responded, "Yes. We'll accept service." Doc. 14-7, Ex. 4, 2.

Hall filed a motion to dismiss (Doc. 9) on February 1, 2021, seeking dismissal of English Tea's complaint based on a lack of personal jurisdiction, improper venue, and English Tea's failure to state a claim upon which relief may be granted. One day later, she filed a supplement to her motion to

dismiss (Doc. 10), along with additional evidence (Doc. 11). English Tea timely filed a response (Doc. 14) to Hall's motion, and Hall's deadline to file a reply brief has passed. Accordingly, Hall's motion is ripe for review.[2]

## II.

## LEGAL STANDARD

A plaintiff bears the burden of establishing a trial court's personal jurisdiction over each defendant. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). A plaintiff need only establish a *prima facie* case of jurisdiction; proof by a preponderance of the evidence is not required. *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 211 (5th Cir. 1999); *Jones v. Petty-Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir. 1992). To satisfy its burden, the plaintiff must "present sufficient facts as to make out only a *prima facie* case supporting jurisdiction" if a court rules on a motion to dismiss without an evidentiary hearing. *Cunningham v. CBC Conglomerate, LLC*, 359 F. Supp. 3d 471, 476 (E.D. Tex. 2019) (italics added and quotation marks omitted) (quoting *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000)).

In considering a motion to dismiss for lack of personal jurisdiction, the Court takes the allegations in the plaintiff's complaint "as true except to the extent that they are contradicted by defendant's affidavits." *Int'l Truck & Engine Corp. v. Quintana*, 259 F. Supp. 2d 553, 557 (N.D. Tex. 2003) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 282–83 n.13 (5th Cir. 1982)). Further, "[a]ny genuine, material conflicts between the facts established by the parties' affidavits and other evidence are resolved in favor of plaintiff for the purposes of determining whether a *prima facie* case exists." *Id.*

---

[2] As explained below, the Court dismisses this case based on a lack of personal jurisdiction. Thus, it does not reach Hall's remaining arguments for dismissal.

(citing *Jones*, 954 F.2d at 1067).

In establishing personal jurisdiction, two preconditions must be met: (1) the nonresident defendant must be amenable to service of process under the Texas long-arm statute; and (2) the assertion of jurisdiction over the nonresident must comport with the Due Process Clause of the United States Constitution. *Jones*, 954 F.2d at 1067. Because the Texas long-arm statute has been held to extend to the limits of the Due Process Clause, the Court need only determine whether jurisdiction over the defendant is constitutionally permissible. *Id.* at 1067–68 (citing *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990)).

To meet the federal constitutional test of due process, two elements must be satisfied: (1) the defendant must have purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with that state such that it would reasonably anticipate being brought to court there; and (2) the exercise of jurisdiction over the defendant must "comport[] with fair play and substantial justice." *Id.* at 1068 (citations omitted).

The "minimum contacts" prong of the due process analysis can be met through contacts that give rise to either general or specific jurisdiction. *Gundle Lining Constr. Corp. v. Adams Cnty. Asphalt, Inc.*, 85 F.3d 201, 205 (5th Cir. 1996). "General personal jurisdiction is found when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial." *Marathon Oil Co. v. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999). In contrast, specific jurisdiction exists "only when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action." *Gundle*, 85 F.3d at 205.

"Once a plaintiff establishes minimum contacts between the defendant and the forum state, the burden of proof shifts to the defendant to show that the assertion of jurisdiction is unfair and

unreasonable." *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 102 (5th Cir. 2018) (citation omitted). In determining whether the assertion of jurisdiction is fair, the Court considers: "(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies." *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 473 (5th Cir. 2006). As the Fifth Circuit recently noted, "[q]uestions of personal jurisdiction typically do not lend themselves to broad generalizations." *Defense Distributed v. Grewal*, 971 F.3d 485, 496 (5th Cir. 2020) (citation omitted).

## III.

## ANALYSIS

The Court first examines two procedural issues: whether Hall's motion was timely and whether the Court can consider her supplemental motion. After concluding that the original motion was timely and that the Court will consider only the original motion, the Court turns to the merits of Hall's motion. As further detailed below, the Court holds it lacks personal jurisdiction over Hall. Further, English Tea's proposed amendment would be futile, and it has not shown that it is entitled to jurisdictional discovery. Accordingly, the Court **DENIES** English Tea's requests for leave to amend and to conduct jurisdictional discovery, and the Court **GRANTS** Hall's motion to dismiss.

A. *The Court Considers Hall's Motion to Dismiss Timely But Will Not Consider Her Supplemental Motion.*

The Court begins by addressing two procedural matters raised by English Tea in its response brief: whether Hall's motion was untimely and whether the Court may consider her supplemental motion. *See* Doc. 14, Resp., 5–7.

With respect to the timeliness of Hall's initial motion to dismiss, which was filed on February 1, 2021, English Tea argues that Hall was required to answer or otherwise respond to the complaint by January 4, 2021. *Id.* at 5. English Tea provides evidence that its counsel sent an email to Hall on December 2, 2020, requesting a waiver of formal service. *See* Doc. 14-3, Ex. B, ¶ 2; Doc. 14-4, Ex. 1, 2. Subsequently, when English Tea did not receive the waiver from Hall or her counsel, English Tea's counsel asked Hall's counsel: "Will you [be] accepting service on behalf of Ms. Hall?" Doc. 14-6, Ex. 3, 2. On December 14, 2020, Hall's counsel responded, "Yes. We'll accept service." Doc. 14-7, Ex. 4, 2. Hall's counsel did not attach a waiver of service at that time. *See generally id.* Nevertheless, based on Hall's counsel's informal acceptance of service, English Tea contends that Hall's answer or motion to dismiss was due on January 4, 2021—twenty-one days after December 14, 2020. Doc. 14, Resp., 5.

The Court disagrees. English Tea has not shown that it properly served Hall by filing an executed return of service or a timely waiver of service. It appears that Hall ultimately completed the waiver form and returned it to English Tea via counsel on January 11, 2021. *See* Doc. 14-8, Ex. 5, 2–3. But this was not a "timely" waiver submission, as English Tea requested the waiver on December 2, 2020, and requested a response by December 11, 2020. Doc. 14-4, Ex. 1, 2; *see* Fed. R. Civ. P. 4(d)(3) (setting an answer deadline for "timely" waivers). Further, English Tea provided Hall eleven days—rather than the minimum of thirty days required by Rule 4—to return the waiver of service. *See* Fed. R. Civ. P. 4(d)(1)(F). In light of these deficiencies, English Tea has not demonstrated that it properly served Hall or that Hall timely waived service. Consequently, the Court has no basis for concluding that Hall's motion to dismiss is untimely, and the Court will consider it.

The Court will not, however, consider Hall's supplemental motion and evidence filed one day after her original motion to dismiss. *See* Doc. 10, Def.'s Mot; Doc. 11, Ex. List. As English Tea points out, Federal Rule of Civil Procedure 12(g) "contemplates a single pre-answer motion in which the defendant asserts all the Rule 12 defenses and objections that are then available to him or her." *Ferris Mfg. v. Thai Care, Co. Ltd.*, 2019 WL 8223064, at *10 (N.D. Tex. Jan 23. 2019) (quoting 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1385 (3d Ed. 2004)). Although Hall's supplemental motion and evidence appears mostly duplicative of her original motion and its attachments, Hall has not provided any justification for the supplemental documents, nor has she sought leave of Court to file them. Consequently, the Court will not consider them.

B.   *The Court Grants Hall's Motion Because the Court Lacks Personal Jurisdiction Over Hall.*

In its response to Hall's motion, English Tea does not suggest the Court has general personal jurisdiction over Hall; rather, it asserts only that the Court has specific personal jurisdiction. *See* Doc. 14, Resp., 7–15. Thus, the Court confines its inquiry to whether it may exercise specific personal jurisdiction over Hall. The Court begins its analysis with whether Hall has the necessary minimum contacts with Texas to confer specific jurisdiction. Because Hall lacks these minimum contacts, the Court holds that it lacks personal jurisdiction over Hall.

Under *Calder v. Jones*, 465 U.S. 783 (1984), "the effects of an alleged intentional tort are to be assessed as part of the analysis of the defendant's relevant contacts with the forum." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 400 (5th Cir. 2009) (emphasis omitted) (quotation marks and citation omitted). The fact that a plaintiff resides in a state and felt the effects of the defendant's conduct there does not, on its own, support specific personal jurisdiction in that state. *Id.* at 401 (citation omitted). But "an act done outside the state that has consequences or effects within the

state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct." *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 628 (5th Cir. 1999) (citing *Calder*, 465 U.S. at 789–90). To confer personal jurisdiction, the intentionally tortious conduct must be "expressly aimed" at the forum state. *Mullins*, 564 F.3d at 400 (quoting *Calder*, 465 U.S. at 789–90). Thus, "mere injury to a forum resident is not a sufficient connection to the forum." *Sangha*, 882 F.3d at 103 (citation omitted). Rather, the Court must determine whether the defendant's "conduct connects it to the forum in a meaningful way." *Id.* at 103–04.

In its response brief, English Tea alleges the following contacts by Hall confer specific personal jurisdiction: (1) Hall has "communicated with [English Tea] and its commonly owned predecessors (and counsel) in Dallas, Texas"; (2) Hall entered "an implied co-existence agreement . . . with [English Tea's] Texas-based predecessors, for performance in Texas"; and (3) English Tea conducts "substantial business in Texas," and Hall submitted takedown notices to Amazon.com that "were expressly aimed at suspending" this Texas business. Doc. 14, Resp., 11.[3] The Court analyzes each set of contacts below.

First, Hall's communications with English Tea are insufficient to create the minimum contacts necessary to confer specific personal jurisdiction. English Tea alleges the first relevant communication occurred in 2008, when counsel for English Tea's "affiliate company," ATP, "contacted Hall" after ATP's trademark application was denied due to "potential consumer confusion" with one of Hall's registered marks. Doc. 1, Compl., ¶¶ 13–15. English Tea alleges that

---

[3] English Tea also relies upon Hall's letter to retailer Tuesday Morning, *see id.*, but as discussed in Section III.C, the Court does not consider this contact.

Hall's counsel responded and "declared amenability to a coexistence agreement." *Id.* ¶ 15. Hall and ATP allegedly "verbally agreed to coexist." *Id.* Then, according to English Tea, Hall's counsel reached out to ATP on March 19, 2012, and "claim[ed] infringement." *Id.* ¶ 16. Thereafter, counsel for ATP (the same counsel currently representing English Tea) responded with a letter "outlining the differences in goods, channels of trade, and consumer demographics," and "extended an offer to cooperate with Hall . . . ." *Id.* ¶ 17. Counsel for ATP "sent Hall a letter outlining terms for a mutual, confidential agreement of coexistence, as previously agreed." *Id.* ¶ 18. "Hall's counsel," however, "did not respond" to the agreement or otherwise contact English Tea or its affiliates. *Id.*

These sparse communications with English Tea's affiliate do not demonstrate Hall's purposeful availment to a Texas forum. As an initial matter, Hall's alleged communications were with ATP—not English Tea. English Tea has provided no authority or facts suggesting that the Court may conflate the two entities for personal-jurisdiction purposes. But even assuming for the sake of argument that the Court may consider Hall's communications with ATP, the "exchange of communications between two parties, one of whom is located in the forum state . . . will not generally constitute purposeful contact with the forum state"—even if this exchange is "in furtherance of a contract[.]" *R&B Falcon Drilling, Inc. v. Noble Denton Grp.*, 91 F. App'x 317, 320 (5th Cir. 2004) (per curiam) (citations omitted); *see, e.g.*, *Libersat v. Sundance Energy, Inc.*, 978 F.3d 315, 322 (5th Cir. 2020) (holding no specific jurisdiction where defendants entered a contract with a resident of the forum state, sent orders and checks to the forum state, and sent written communications to the plaintiffs in the forum state).

Although there is an exception to this general rule when there is "an alleged intentional tort committed via the *contents* of the communication into the forum state," English Tea has not alleged

any intentional tort based on the contents of Hall's counsel's 2008 and 2012 communications. *See Orix Pub. Fin., LLC v. Lake Cnty. Hous. & Redevelopment Auth.*, 2011 WL 3628958, at *7 (N.D. Tex. Aug. 16, 2011) (emphasis in original) (citation omitted). Rather, here, the communications "were simply a consequence of the fortuitous fact that" ATP—an affiliate of English Tea—maintained counsel in Texas. *See CNA Holdings, Inc. v. Kaye Scholer LLP*, 2008 WL 11349752, at *7 (N.D. Tex. Oct. 10, 2008) (citation omitted); *see Walden v. Fiore*, 571 U.S. 277, 285 (2014) ("[O]ur 'minimum contacts' analysis looks to the defendant's contacts with the forum [s]tate itself, not the defendant's contacts with persons who reside there." (citation omitted)). Thus, Hall's communications with ATP do not demonstrate purposeful availment.

Similarly, Hall's alleged entry into the coexistence agreement is insufficient to give rise to specific jurisdiction. In determining whether the execution of a contract gives rise to specific jurisdiction, the Court considers factors like "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing[.]" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985). Further, the Court may consider specifics like "the anticipated place of place of performance of the contract, choice-of-law provisions," and "whether a long-term relationship between the parties is planned." *Orix*, 2011 WL 3628958, at *4–5 (citing, *inter alia*, *Brammer Eng'g, Inc. v. E. Wright Mountain, Ltd. P'ship*, 307 F. App'x 845, 848 (5th Cir. 2009) (per curiam)).

Based on these considerations, Hall's alleged entry of the implied agreement does not constitute purposeful availment. As an initial matter, English Tea does not even allege that Hall affirmatively entered a contract—instead, it alleges that "Hall's counsel did not respond" to the proffered agreement and thereby permitted English Tea and its affiliates "to coexist" with Hall. Doc.

1, Compl., ¶ 18; *see also id.* ¶ 47 ("Hall has refrained from claiming infringement or attempting to enforce her [registered mark] against English Tea, its predecessors, and its affiliated companies."). Thus, Hall's contacts with respect to any implied agreement are hardly purposeful. Next, given that the alleged contract was one of implied coexistence, the Court rejects English Tea's contention that Hall negotiated an agreement "for performance in Texas." Doc. 14, Resp., 11. Finally, English Tea has not alleged any specific terms of the contract, nor was there any plan for a "long-term relationship" between Hall and English Tea. *See Orix*, 2011 WL 3628958, at *4–5 (citations omitted). Accordingly, English Tea's allegations of an implied coexistence agreement do not constitute purposeful availment by Hall. *See, e.g.*, *Norwood v. Teather*, 2005 WL 723863, at *3 (N.D. Tex. Mar. 28, 2005) (finding insufficient contacts with Texas where the defendant entered an oral contract with a Texas-based plaintiff to purchase some of the plaintiff's "Texas-based business," visited the plaintiff in Texas, and maintained a "business relationship" with the plaintiff "for several years").

Nor do the takedown notices show that Hall purposefully availed herself of the privilege to conduct activities in Texas. English Tea alleges it "maintain[s] significant sales in the Dallas, Texas area" although it is a California corporation. Doc. 1, Compl., ¶ 1. In light of these sales, English Tea suggests that Hall's takedown notices "were expressly aimed at suspending [English Tea's] business here in Texas." Doc. 14, Resp., 11. However, English Tea does not allege such an intention in its complaint, nor has English Tea alleged any facts from which the Court could infer that Hall's takedown notices were aimed at Texas. *See generally* Doc. 1, Compl.

Indeed, English Tea's allegations suggest that the notices lack a nexus to Texas. First, as noted above, English Tea is a California corporation, not a citizen of Texas. *Id.* ¶ 1. Second, English

Tea itself alleges that the takedown notices resulted in an $8,500 loss—in contrast to its $1.28 million in annual revenue. *Id.* ¶¶ 7, 38. Thus, Hall's takedown notices affected less than one percent of English Tea's business. Third, English Tea has not even alleged that most of its $8,500 loss is the loss of Texas-based business; rather, it alleges only that the notices "resulted in the suspension of sale of English Tea's products from English Tea's sellers on Amazon (including but not limited to sales to consumers in this Judicial District)." *Id.* ¶ 5. Based on these facts, Hall's takedown notices were not expressly aimed at Texas.

Though English Tea suggests that this case is "almost identical" to *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063 (10th Cir. 2008), the Court disagrees. *See* Doc. 14, Resp., 9. In *Dudnikov*, the Tenth Circuit held that Colorado courts could exercise specific jurisdiction over defendants that, by sending a notice to eBay in California, suspended an online auction of the plaintiffs, who sell products from their Colorado home. *Id.* at 1067–68. The plaintiffs' "eBay auction pages clearly list[ed] the location of their merchandise as . . . Colorado, and link[ed] to their personal website which contains more information about their business, including its location in Colorado." *Id.* at 1068. Further, not only did the defendants attempt to cancel the auction, but they also "e-mailed plaintiffs directly in Colorado threatening them with suit in federal court . . . ." *Id.* at 1075. Like a "bank shot in basketball" in which a player "intends to hit the backboard" with the purpose of "putting the ball into the basket," the Tenth Circuit explained, the defendants sent a notice "to eBay in California . . . with the ultimate purpose of cancelling [the] plaintiffs' auction in Colorado." *Id.* Accordingly, the defendants' "express aim in acting was to halt a Colorado-based sale by a Colorado resident[.]" *Id.* at 1076.

In contrast with the plaintiffs in *Dudnikov*, English Tea is not based in the forum

state—English Tea is a California corporation arguing for personal jurisdiction over Hall in Texas. Moreover, English Tea's complaint is devoid of any facts suggesting that Hall's intent was to halt sales in Texas. Thus, while English Tea may have taken its shot by submitting takedown notices to Amazon.com, there is no evidence that the end goal was specific to Texas—this was not a "bank shot" aimed at Texas. *See id.* at 1075. These salient distinctions render English Tea's reliance on *Dudnikov* misplaced and demonstrate how English Tea's case differs from those in which courts find the minimum-contacts prong satisfied. *Cf. Defense Distributed*, 971 F.3d at 496 n.10 (holding defendant was subject to personal jurisdiction based on sending a cease-and-desist letter to Texas, "coupled with other actions he took that, together, demonstrate[d] his intent to gut" the operations of the Texas-based plaintiff); *Nursery Decals & More, Inc. v. Neat Print, Inc.*, 2020 WL 1819885, at *7 (N.D. Tex. Apr. 10, 2020) (holding defendant was subject to personal jurisdiction in Texas where defendant submitted a takedown notice for the plaintiff's sales and the plaintiff's webpage "prominently displayed" that its business was located in Texas); *Marshall v. Fulton*, 2009 WL 2136408, at *6 (N.D. Tex. July 17, 2009) (holding personal jurisdiction in Texas existed where the defendant sent letters to the plaintiff's stores and distributors, including some located in Texas, aimed at damaging the plaintiff, who was based in Texas).

Finally, even taking all of Hall's contacts together, the Court finds them insufficient to establish minimum contacts with the state of Texas. Though Hall (through counsel) has communicated with affiliates of English Tea in Texas, and Hall's takedown notices may have affected Texas business, English Tea's complaint lacks allegations suggesting that Hall's "conduct connects [her] to the forum in a meaningful way." *Sangha*, 882 F.3d at 103–04. The Court therefore lacks personal jurisdiction over Hall and **GRANTS** her motion to dismiss.

C.  *The Court Denies English Tea Leave to Amend its Personal Jurisdiction Allegations.*

In its response brief, English Tea requests leave to amend its complaint to allege an additional contact by Hall—a cease-and-desist letter dated January 22, 2021, from Hall to one of English Tea's Texas-based retailers. Doc. 14, Resp., 24–25. But in assessing personal jurisdiction, the Court cannot consider post-complaint contacts. *See Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784, 787 n.1 (5th Cir. 1990); *De Leon v. Shih Wei Nav. Co.*, 269 F. App'x 487, 490 n.11 (5th Cir. 2008) (per curiam); *Glazier Grp., Inc. v. Mandalay Corp.*, 2007 WL 2021762, at *8 (S.D. Tex. July 11, 2007) ("Courts in the Fifth Circuit . . . look[] to facts up to the filing of the complaint rather than postcomplaint conduct." (citations omitted)). "[R]eliance on post-suit activities by a defendant means there would be no fair warning at all" and thus "would violate due process." *Gather Workspaces LLC v. Gathering Spot, LLC*, 2020 WL 6118439, at *4 (D.D.C. Oct. 16, 2020).

Since the Court cannot consider post-complaint contacts when assessing personal jurisdiction, English Tea's request to amend its complaint to allege the new letter would be futile for purposes of establishing personal jurisdiction. The Court thus **DENIES** English Tea's request to amend. *See Morgan v. Chapman*, 969 F.3d 238, 248 (5th Cir. 2020) (stating that leave to amend under Rule 15 "may be denied when it would . . . be futile" (citation omitted)).

D.  *The Court Denies English Tea's Request for Jurisdictional Discovery.*

Finally, English Tea asks that the Court permit jurisdictional discovery if it concludes that it lacks specific jurisdiction over Hall. Doc. 14, Resp., 24. "The Fifth Circuit . . . has held that jurisdictional discovery is only appropriate after a plaintiff has made a preliminary showing of jurisdiction." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 620 (N.D. Tex. 2014) (collecting cases). To make a preliminary showing, the plaintiff's

pleadings must contain "factual allegations that reasonably suggest that personal jurisdiction exists . . . ." *Id.* (citing *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005)). "A plaintiff is not entitled to jurisdictional discovery when 'the record shows that the requested discovery is not likely to produce the facts needed to withstand a Rule 12(b)(1) motion.'" *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 434 (5th Cir. 2014) (quoting *Freeman v. United States*, 556 F.3d 326, 342 (5th Cir. 2009)). In the same vein, the Court need not permit jurisdictional discovery when a motion to dismiss raises no issues of fact. *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000) (citation omitted).

Here, English Tea has not made a preliminary showing of jurisdiction, so it is not entitled to jurisdictional discovery. English Tea's request is limited to one sentence—it does not mention any discoverable facts that could give rise to personal jurisdiction over Hall. *See* Doc. 14, Resp., 24. Nor has English Tea identified any issues of fact that, if resolved in its favor, would give rise to personal jurisdiction over Hall. *See id.* Consequently, English Tea has not demonstrated that jurisdictional discovery is appropriate, and the Court **DENIES** its request.

## IV.

## CONCLUSION

In sum, the Court lacks personal jurisdiction over Hall. Further, English Tea's proposed amendment does not remedy this defect, so the Court **DENIES** English Tea's request for leave to amend its complaint. The Court also **DENIES** English Tea's request for jurisdictional discovery. Accordingly, the Court **GRANTS** Hall's motion to dismiss (Doc. 9) and **DISMISSES** this case **WITHOUT PREJUDICE** for lack of personal jurisdiction.

SO ORDERED.

SIGNED: May 17, 2021.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE